634 P.2d 680

**STATE of New Mexico, Petitioner,**
v.
**Mark Allen CHOUINARD, Respondent.**

**No. 13423.**

Supreme Court of New Mexico.

Sept. 23, 1981.

Rehearing Denied Oct. 23, 1981.

Jeff Bingaman, Atty. Gen., Charles F. Noble, James Blackmer, Asst. Attys. Gen., Santa Fe, Sasha Siemel, Asst. Dist. Atty., for petitioner.

Nancy Hollander, Albuquerque, for respondent.

## OPINION

PAYNE, Justice.

This petition for certiorari arose from the reversal of two separate convictions of the defendant, Mark Chouinard. The Court of Appeals also ordered the defendant discharged. 96 N.M. ——, 635 P.2d 986. We reverse.

The defendant was indicted on September 21, 1977, on nine counts of trafficking in cocaine. He failed to appear for arraignment and was not apprehended and arrested on the indictment until May 15, 1979. In the interval, on May 16, 1978, the district attorney mistakenly authorized a court order for destruction of the substance alleged to be cocaine, which was the physical evidence in the case against the defendant for all but Count VII. The defendant moved for dismissal on grounds of destruction of the evidence. The trial court denied the motion but tried Count VII separately from the remaining counts. The defendant was found guilty in both trials, and appealed. We granted certiorari to consider the Court of Appeals' reversal of both convictions.

## I.

In his appeal from his conviction in the first trial (Count VII), the defendant alleged five points of error, three of which were considered by the Court of Appeals:

I. The classification of l-cocaine (cocaine derived from the coca leaf) as a narcotic is irrational.

II. The trial court erred when it refused to strike the testimony of the State's chemist when the defendant objected that the chemist's testimony was not competent.

III. The prosecution failed to prove beyond a reasonable doubt that the substance was l-cocaine and not some other substance.

### A.

■ The constitutional challenge to classification of cocaine as a narcotic was considered by the Court of Appeals and we adopt their discussion. We hold that the State Legislature can, like Congress, rationally classify cocaine, a non-narcotic central nervous system stimulant, as a narcotic for penalty and regulatory purposes.

### B.

■ The Court of Appeals also held that the State's failure to strike the incorrect testimony of the State's chemist was reversible error. We disagree. The relevant portion of the Controlled Substances Act, § 54–11–2(P), N.M.S.A. 1953 (Supp. 1975), states:

"narcotic drug" means any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:

\* \* \* \* \* \*

(4) coca leaves and any salt, compound, derivative or preparation of coca leaves, any salt, compound, isomer, derivative or preparation which is a chemical equivalent of any of these substances except decocainized coca leaves or extractions of coca leaves which do not contain cocaine or ecgonine; \* \* \* \*

See also § 54–11–7(A)(4), N.M.S.A. 1953 (Supp. 1975).

The defense in this action was that the substance transferred was not coca leaf cocaine, but a manufactured substance which was not the chemical equivalent of coca leaf cocaine. The State's analysis of the substance showed that it was a form of cocaine, but was not conclusive as to whether it was l-cocaine, a derivative of the coca leaf which is an anesthetic and a stimulant, or d-cocaine, which is man-made and may have little or not effect as either a stimulant or anesthetic.

The State's first expert chemist incorrectly testified that both d-cocaine and l-cocaine were derived from the coca leaf. However, the State's other expert witness and the defense's expert witness contradicted this testimony. The defense pointed out the erroneous testimony during examination of witnesses and in its closing argument. While the State did not affirmatively impeach its own witness, the error was discovered and contradicted during the trial.

This case is therefore distinguishable from those cited by the defense in which the error was not discovered until after the case had been submitted to the jury, *see Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), or in which the State failed to correct, before the case went to the jury evidence already known to be false, *see State v. Hogervorst*, 87 N.M. 458, 535 P.2d 1084 (Ct. App.), *cert. quashed*, 87 N.M. 457, 535 P.2d 1083 (1975). The defense asks us to extend these cases to find reversible error in the prosecutor's failure to affirmatively rebut the incorrect testimony of one of its witnesses even though another prosecution witness corrected the erroneous testimony and the defense extensively pointed out the error. We decline to go so far. Broad discretion in the admission or exclusion of expert evidence will be sustained unless manifestly erroneous. *Sanchez v. Safeway Stores, Inc.*, 451 F.2d 998 (10th Cir. 1971). The trial court was faced with conflicting expert testimony. We cannot require a trial court to take judicial notice of whatever facts are necessary to prove the validity of one expert's testimony in order to strike the other expert's erroneous testimony. Accordingly, we hold that the trial court's refusal to strike this testimony was not manifestly erroneous.

### C.

■ The Court of Appeals held that consideration of the incorrect testimony resulted in a failure of proof on some of the elements of the crime charged. In a criminal prosecution the State has the burden of proving each element of the offense charged beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Carter*, 93 N.M. 500, 601 P.2d 733 (Ct. App.), *cert. denied*, 93 N.M. 683, 604 P.2d 821 (1979). In deciding if the State has met its burden we view the evidence in the light most favorable to the jury's verdict and resolve all conflicts and indulge all permissible inferences in favor of this verdict. *State v. Aubrey*, 91 N.M. 1, 569 P.2d 411 (1977); *State v. Carter, supra.*

■■ A conviction for trafficking in a controlled substance can be sustained by circumstantial evidence. *See State v. Burrell*, 89 N.M. 64, 547 P.2d 69 (Ct. App. 1976). From the evidence presented at trial regarding the circumstances in which the transaction occurred the jury could properly draw the inference that cocaine was involved, even without the incorrect testimony.

We reverse the Court of Appeals as to the first trial and remand the case to them for consideration of the remaining issues raised in the defendant's appeal.

### II.

The basis for reversal in the second trial (on all the remaining counts) was the destruction of the evidence. The evidence was destroyed when the Bernalillo County District Attorney's office erroneously included it in a list of evidence no longer necessary for preservation. Neither the defendant's failure to appear nor the subsequent disappearance directly caused the destruction of the evidence. The question presented therefore is what sanctions will be applied against the State for its failure to preserve evidence.

In *United States v. Miranda*, 526 F.2d 1319 (2d Cir. 1975), *cert. denied*, 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976), the Second Circuit undertook careful review of federal cases in which the question of applying sanctions for loss of evidence arose. The defendant in that case sought to suppress testimony as to a certain conversation, a tape recording of which had been lost by the prosecution. The court held that the loss was merely inadvertent or negligent, and that the defense was not so greatly prejudiced by the unavailability of the recording at trial as to require the imposition of sanctions against the Government.

In a criminal case, the Government plainly has the obligation to make available to the defense evidentiary material in its possession which is disclosable under the due process safeguards of *Brady v. Maryland*, 373 U.S. 83, [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963). * * * *

If the Government fails to carry out that obligation, a serious question arises

as to whether such failure calls for the imposition of sanctions against the Government. Whether or not sanctions for nondisclosure should be imposed depends in large measure upon the extent of the Government's culpability for failure to make disclosable material available to the defense, on the one hand, weighed against the amount of prejudice to the defense which resulted, on the other.

*Id.* at 1324 (citations and footnote omitted).

The court mentioned its earlier decision in *United States v. Augello,* 451 F.2d 1167 (2d Cir. 1971), *cert. denied,* 405 U.S. 1070, 92 S.Ct. 1518, 31 L.Ed.2d 802 (1972), where it refused to order suppression of testimony concerning a conversation a tape of which had been destroyed. The court had relied on the first of the *Bryant* cases, *United States v. Bryant,* 439 F.2d 642 (D.C. Cir. 1971) (Bryant I); *United States v. Bryant,* 448 F.2d 1182 (D.C. Cir. 1971) (Bryant II). Those cases applied a pragmatic balancing approach, requiring the district court to

> Weigh the degree of negligence or bad faith involved, the importance of the evidence lost, and the evidence of guilt adduced at the trial in order to come to a determination that will serve the ends of justice.

439 F.2d at 653. The convictions in those cases were affirmed, after applying this balancing test, although the negligence of the agent was "regrettably great." However, the *Bryant* court specified that in future cases it would require rigorous and systematic rules for evidence preservation, and would examine the Government's observance of these rules.

The *Miranda* court summarized its review of cases from other circuits as follows:

> Other circuits have dealt with the loss of disclosable evidence by the Government on a case-by-case basis, and have refused to impose sanctions where the loss was inadvertent and not deliberate or in bad faith, and there was not such prejudice to the defendant as to deny him a fair trial. *See United States v. Love,* 482 F.2d 213 (5th Cir. 1973); *United States v. Sewar,* 468 F.2d 236 (9th Cir. 1972), *cert. denied,* 410 U.S. 916, 93 S.Ct.

972, 35 L.Ed.2d 278 (1973); *United States v. Shafer,* 445 F.2d 579, 581–82 (7th Cir.), *cert. denied,* 404 U.S. 986, 92 S.Ct. 448, 30 L.Ed.2d 370 (1971); *United States v. Rojas,* 502 F.2d 1042, 1044–45 (5th Cir. 1974). *See also United States v. Augenblick,* 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969), cited in *United States v. Augello, supra,* where the Supreme Court indicated that while sanctions should be imposed on the Government for bad faith suppression of evidence, they are not appropriate where the loss was in good faith and earnest efforts had been made to find the evidence, once its loss was discovered.

526 F.2d at 1327.

These cases are well reasoned and persuasive.

■■ New Mexico has adopted a three-part test to determine whether deprivation of evidence is reversible error. It was first stated in *State v. Lovato,* 94 N.M. 780, 617 P.2d 169 (Ct.App.1980), as follows:

1) The State either breached some duty or intentionally deprived the defendant of evidence;

2) The improperly "suppressed" evidence must have been material; and

3) The suppression of this evidence prejudiced the defendant.

*Id.* at 782, 617 P.2d at 171. *See also State v. Duran,* N.M., 630 P.2d 763 (1981); *Trimble v. State,* 75 N.M. 183, 402 P.2d 162 (1965); *Chacon v. State,* 88 N.M. 198, 539 P.2d 218 (Ct.App.1975). The purpose of the three-part test is to assure that the trial court will come to a determination that will serve the ends of justice. We consider the three-part test appropriate to a proper resolution of the question presented here. We do not construe the test to exclude the results of every test based on evidence which is no longer available. For example, where the evidence is used up during testing, a defendant is only able to cross-examine the State's witnesses. *Jamison v. State Racing Commission,* 84 N.M. 679, 507 P.2d 426 (1973). Thus if the substance in the present case had been used up during testing, the State would not have breached any

duty, and there would have been no due process violation. Also, where material is destroyed before its significance as evidence is realized, the defendant's inability to inspect or test does not deny him due process. *See State v. Stephens*, 93 N.M. 368, 600 P.2d 820 (1979).

*Lovato, Trimble*, and *Chacon* are each distinguishable from the present case. Chouinard essentially based his defense on the State's inability to prove that the substance he sold was l-cocaine. He did not contradict the State's presentation of the circumstances of the various transactions, nor did he attempt to explain the source of the substance or present any other evidence to show it was d-cocaine. During the trial, defense counsel carefully and thoroughly pointed out inconsistencies and apparent incompetence on the part of the State's expert witnesses. The jury was fully aware of the destruction of the evidence and of the possibility that further tests would have revealed that the substance was d-cocaine. However, considering all the evidence before it, and not just the test results, the jury found Chouinard guilty.

*Lovato, supra*, dealt with the invocation of a statutory presumption of guilt based on a blood alcohol test. Retesting could have made invocation of the presumption improper. This is significant because it appears that no other evidence was presented on the question of the defendant's intoxication. In the present case, the test results were no so determinative of guilt. *Lovato* also presented the court with an impermissible procedure for evidence preservation. In that case, there were no systematic rules to reasonably assure preservation of evidence. A court can hardly uphold such manifest indifference to proper law enforcement. The present case does not present such a situation since acceptable preservation procedures existed.

*Lovato* cited *Chacon* and *Trimble, supra*, for the proposition that "[n]o different standard applies because the nondisclosure is negligent rather than deliberate." *Chacon, supra*, at 199, 539 P.2d at 219.

*Chacon, supra*, presented a situation where the jury, and the defendant, were unaware during the trial of the prosecution's failure to disclose relevant evidence. This presented a question significantly different from the case at hand, where the destruction of evidence was fully presented to the jury for their consideration.

*Trimble, supra*, was a response to wholly inappropriate police conduct. There, evidence not necessary to the prosecution was taken, damaged and lost. The prosecutor apparently contradicted himself at trial as to the very existence of the lost items. The defendant specifically identified the contents of the lost evidence. Here, however, Chouinard did not say what the substance was, only that it might have been something other than illegal cocaine. There is no indication of prosecutorial misconduct at trial. The evidence preservation procedures followed by the district attorney were systematic and reasonably assure preservation of evidence.

This case thus presents a significant question of first impression. Even with the best of procedures, evidence may sometimes be lost as it was here. In such instances, what should be done?

Where the loss of evidence is not known during the trial, as in *Chacon, supra*, and the evidence is material and its absence prejudicial to the defendant, the only remedy is a new trial incorporating the lost evidence once it is found. Where the loss is known prior to trial, there are two alternatives: Exclusion of all evidence which the lost evidence might have impeached, or admission with full disclosure of the loss and its relevance and import. The choice between these alternatives must be made by the trial court, depending on its assessment of materiality and prejudice. The fundamental interest at stake is assurance that justice is done, both to the defendant and to the public.

■ We have cited *Chacon, supra*, as saying that no different standard applies because the nondisclosure is negligent rather than deliberate. The good faith of the State is irrelevant when the evidence lost is

material and prejudicial to the accused. But, where the State shows it did not act in bad faith, the defendant must show materiality and prejudice.

Determination of materiality and prejudice must be made on a case-by-case basis. The importance of the lost evidence may be affected by the weight of other evidence presented, by the opportunity to cross-examine, by the defendant's use of the loss in presenting the defense, and other considerations. The trial court is in the best position to evaluate these factors.

■ Applying this analysis here, we conclude that the trial judge did not abuse his discretion as a matter of law. In the posture of this case, we cannot say that there is a realistic basis, beyond extrapolated speculation, for supposing that availability of the lost evidence would have undercut the prosecution's case. Chouinard made no assertion and introduced no evidence that the substance was other than what the State said it was. His only defense was that the State's tests were insufficiently conclusive. In light of all the circumstances, the jury found otherwise.

Accordingly, we reverse the Court of Appeals as to the second trial and reinstate the judgment of the district court.

BE IT SO ORDERED.

EASLEY, C. J., and FEDERICI, J., concur.

SOSA, Senior Justice, dissenting.

RIORDAN, J., not participating.