789 P.2d 627
**STATE of New Mexico,**
**Plaintiff–Appellant,**

v.

**Boyd BARTLETT, Defendant–Appellee.**

**No. 10994.**

Court of Appeals of New Mexico.

March 6, 1990.

Hal Stratton, Atty. Gen. and Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Penni Adrian and Ron Koch, Pros. Attys., Albuquerque, for defendant-appellee.

## OPINION

ALARID, Judge.

The opinion filed in this case on February 27, 1990, is hereby withdrawn and the following opinion is substituted therefor.

The state appeals the dismissal of a charge filed against defendant. The dismissal was based on the state's failure to comply with a discovery order. We reverse.

Defendant was charged with criminal sexual penetration based on an incident that occurred on August 13, 1987. The victim was interviewed by a detective on August 14 and again on September 3, and gave a description of her attacker at both interviews. The district court later determined that both interviews were taped. Despite numerous requests by defendant's counsel, however, the state was unable to produce the tape of the first interview. Subsequently, defendant was tried for the offense. The jury was unable to reach a verdict in that trial. Following the state's indication that it intended to re-try defendant, defendant moved to compel production of the missing tape of the August 14 interview. The trial court held a hearing on the matter, apparently determined that the tape had existed at one time, and ordered the state to produce it. The state did not do so, and the court dismissed the case for the state's failure to comply with its order.

## DISCUSSION

■ Sanctions for violations of discovery orders are discretionary with the trial court. *State v. Tomlinson,* 98 N.M. 337, 648 P.2d 795 (Ct.App.), *rev'd on other grounds,* 98 N.M. 213, 647 P.2d 415 (1982). A defendant is not entitled to a dismissal or other sanctions upon a mere showing of violation of a discovery order. Instead, the defendant must establish prejudice resulting from the violation. *Id.* Where the

violation results from lost or destroyed evidence, as in this case, a three-prong test has been established for determining appropriate sanctions. *See State v. Chouinard,* 96 N.M. 658, 634 P.2d 680 (1981), *cert. denied,* 456 U.S. 930, 102 S.Ct. 1980, 72 L.Ed.2d 447 (1982). The test requires a court to balance three different considerations in deciding what, if any, sanctions should be imposed: (a) whether the state breached a duty or intentionally deprived defendant of the missing evidence; (b) whether the missing evidence was material to the case; and (c) whether defendant was prejudiced by the absence of the evidence. *See id.* Factors bearing on these issues include the presence of negligence or bad faith on the part of the state, the importance of the evidence to the defendant's case, and the amount of other evidence of guilt adduced at trial. *See id.* (discussing, with approval, federal cases); *State v. Fero,* 105 N.M. 339, 732 P.2d 866 (1987) (citing *Chouinard* and stating that the importance of the lost evidence depends on many factors, including the weight of other evidence introduced). We emphasize that since this is a discovery sanctions case, not a due process case, the analysis is somewhat different than that employed in *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Although due process considerations are intertwined with the issue of appropriate discovery sanctions, especially where the sanctions result from lost or destroyed evidence, the trial court's discretion to apply such sanctions is greater than would be afforded by a pure due process analysis. For that reason, we believe the balancing test discussed in this opinion is a more appropriate means of analyzing discovery sanctions imposed by a trial court.

■ We start our analysis of this case with the premise that dismissal is an extreme sanction to be used only in exceptional cases. *Cf. State v. Chouinard,* 96 N.M. at 662, 634 P.2d at 684 (laying out alternatives when the loss of evidence is discovered before trial: either exclusion of all evidence which the lost evidence might have

impeached, or admission of that evidence with full disclosure of the loss and its relevance and import; dismissal is not one of the options discussed); *see also United States v. Miranda*, 526 F.2d 1319 (2d Cir. 1975) (case involving lost tape of conversation between informant and defendant; while discussing trial court's refusal to suppress testimony regarding that conversation, the court observed that possible sanctions include, in exceptional circumstances, dismissal of the indictment), *cert. denied*, 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976); *United States v. DePalma*, 476 F.Supp. 775 (S.D.N.Y.1979) (stating that dismissal is a most drastic remedy and must be reserved for extremely rare cases). Dismissal is appropriate only if the defendant can show he will be deprived of a fair trial if he is tried without the missing evidence. *See United States v. Heath*, 147 F.Supp. 877 (D.Haw.1957) (defendant unable to prepare a defense without the missing evidence, so fair trial impossible; indictment dismissed); *see also United States v. Banks*, 374 F.Supp. 321 (D.S.D. 1974) (dictum to the effect that dismissal is appropriate only if the evidence is so vital to defendant that a fair trial cannot be held without it). Therefore, the relevant factors must weigh heavily in favor of defendant to justify dismissal instead of some lesser sanction.

■ The issues of deliberate misconduct or bad faith on the part of the state were not explicitly determined at the proceeding below. The trial court did express concern about the possibility that the evidence was deliberately lost, but added that it was not necessarily saying that had occurred in this case. Rather than remand for a specific determination as to whether loss of the tape was deliberate or inadvertent, we presume for purposes of this opinion that some degree of deliberate fault on the part of the state was present. Given the trial court's failure to explicitly find such fault, however, and the absence of any real indication that loss of the tape was deliberate, this fault weighs against the state only slightly more than negligent loss of evidence. As we discuss below, balancing this fault with the other factors, and with the

fact that dismissal is an extreme sanction, leads to the conclusion that dismissal was not warranted in this case.

The missing tape satisfies the materiality requirement of *Chouinard* because the victim's initial descriptions of her attacker, as outlined in the police report and the victim's preliminary hearing testimony, varied somewhat from her description at trial and from defendant's appearance at trial. The contents of the tape bear on the accuracy of the victim's identification of defendant as her attacker and upon her credibility, and are thus material. *Cf. Chacon v. State*, 88 N.M. 198, 539 P.2d 218 (Ct.App. 1975) (undisclosed witness statement bearing on method of entry in burglary case is material).

The prejudice prong of the *Chouinard* test contains at least two components: the importance of the missing evidence to defendant, and the strength of the other evidence of defendant's guilt. *See id.* Since the jury was unable to reach a verdict at the first trial, the latter component is not obviously present in this case. Resolution of this case rests on a determination of the importance of the tape to defendant's defense, and a decision as to whether he could receive a fair trial without it.

Defendant's defense at trial was that the victim's identification was mistaken or a fabrication, and that the variances in her descriptions raised at least a reasonable doubt as to whether he was involved in the attack. Defendant argues the tape is crucial because it concerns the conflicting descriptions the victim gave of her attacker, and thus her credibility in identifying defendant as that attacker. Without the tape, argues defendant, he cannot establish what the victim told the investigating detective at the first interview. We agree that the tape is important to defendant. We do not agree, however, that it is so important as to deprive defendant of a fair trial.

At the first trial, defendant pointed out the various inconsistencies in the descriptions given by the victim. There were inconsistencies in the description of the at-

tacker's hair and eye color and the presence or absence of facial hair in the initial police report, in the description the victim gave at the preliminary hearing, and in the description she gave at trial. Defendant focused heavily on those inconsistencies in his cross-examination of the victim and of the investigating detective. Defendant extensively argued the issues of the missing tape and the inconsistent descriptions in his closing argument. The inability to review the missing tape may have weakened defendant's defenses of mistaken identity or fabrication, but he was still able to vigorously raise and pursue those defenses. We cannot say, therefore, that the tape was so important to defendant as to require dismissal upon the state's inability to produce it. *See United States v. Miranda* (dismissal would be unduly heavy sanction for loss of evidence concerning a subject on which other primary evidence was available and adduced, and where defendant was able to raise issue of lost tape at trial); *State v. Fero* (ability to cross-examine witnesses concerning lost evidence is factor to be considered in assessing importance of evidence). Under the circumstances of this case, the missing tape simply does not constitute the type of crucial evidence the absence of which would mandate dismissal.

As we have discussed above, the missing evidence was not so important to defendant that his defense was greatly prejudiced by its absence. Similarly, the presumed degree of fault on the part of the state, in the absence of indications of more culpable behavior, was not egregious. Given the fact that dismissal is appropriate only in the rarest of cases, we hold that it was too severe a sanction in this case.

To the extent that defendant is arguing he would be deprived of due process if retried without the missing tape, we disagree. Our discussion of the sanctions issue has already established that the missing tape was not of such crucial importance that defendant cannot receive a fair trial without it, and the same factors we considered in that discussion apply to a claimed violation of the right to due process. *See State v. Chouinard* (interweaving due process concepts with issue of ap-propriate sanctions to apply in the event evidence is lost). We note that a defendant arguing that retrial should be precluded as a result of a due process violation should properly have a heavier burden to bear than a defendant contending only that his conviction should be reversed—preclusion of a retrial is obviously a much more onerous sanction than mere reversal. *Cf. State v. Lovato*, 94 N.M. 780, 617 P.2d 169 (Ct. App.1980) (finding due process violation in state's failure to preserve blood for testing, but remanding for retrial without use of the blood tests performed by the state). Finally, as we discuss below, appropriate sanctions other than dismissal may be applied to at least partially alleviate the effects of the loss of the tape. Where such effective sanctions are available, a claim of violation of due process is less persuasive. We conclude that defendant's right to due process will not be violated if he is retried without having access to the lost tape.

Our holding does not preclude the trial court, on remand, from imposing lesser sanctions upon the state. Without meaning to restrict the court's discretion in any manner, we can envision several types of sanctions that might be appropriate. For example, the court might attempt to replace the missing tape by requiring the jury to find that the description given in the August 14 interview was consistent with that contained in the initial police report. Alternatively or in addition, the court might preclude the state from arguing that the inconsistencies were the result of translation error, since the absence of the tape precludes defendant from establishing that no such error occurred.

Based on the foregoing, we hold that the sanction of dismissal was not appropriate under the circumstances of this case, and we reverse and remand.

IT IS SO ORDERED.

BIVINS and APODACA, JJ., concur.