**Certiorari Denied, August 26, 2013, No. 34,221**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2013-NMCA-089**

**Filing Date:  May 29, 2013**

**Docket No. 31,558**

**STATE OF NEW MEXICO,**

        **Plaintiff-Appellant,**

**v.**

**SHAWN T. REDD,**

        **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF McKINLEY COUNTY**
**Grant L. Foutz, District Judge**

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Appellant

Paul Kennedy & Associates
Paul J. Kennedy
Arne R. Leonard
Albuquerque, NM

for Appellee

**OPINION**

**WECHSLER, Judge.**

**{1}**    The State appeals from the district court's order dismissing charges filed against Defendant Shawn Redd.  The district court dismissed the charges because, due to computer problems, the State lost an audio recording of the alleged victim's initial interview with the investigating officer conducted on the day the allegations were reported to the police.  We

1

hold that the district court erred in dismissing the charges because the loss of the recording of the initial interview was not prejudicial to Defendant. Accordingly, we reverse the district court's dismissal of Defendant's charges.

**BACKGROUND**

**{2}**     The district court dismissed three counts of criminal sexual penetration of a minor (CSPM), one count of criminal sexual contact of a minor (CSCM), one count of false imprisonment, and two counts of intentional child abuse. The charges arose out of allegations of sexual abuse against Defendant by a ten-year-old victim (the Victim). Two CSPM counts were based on allegations that Defendant caused Victim to engage in anal intercourse with Defendant, and the remaining CSPM count was based on an allegation that Defendant caused Victim to engage in oral penetration. Both child abuse counts were based on allegations that Defendant anally penetrated Victim.

**{3}**     On November 5, 2009, Investigator Merle Bates, a deputy sheriff with the McKinley County Sheriff's Department, responded to a domestic call at Defendant's home. Once Investigator Bates arrived at the residence, he conducted interviews with Victim and Victim's mother. Investigator Bates recorded the interviews on a digital recorder and later transferred the files to his computer. The ten-minute interview Investigator Bates conducted and recorded with Victim (hereafter referred to as the initial interview) is the subject of this case.

**{4}**     In the initial interview, Victim told Investigator Bates that Defendant attempted oral penetration, but she did not allege any other type of sexual penetration, including anal penetration. In later interviews and during grand jury testimony, Victim alleged that Defendant attempted or completed anal penetration, which formed the basis of two of the CSPM counts and both child abuse counts.

**{5}**     The district court held a pretrial conference on August 16, 2010, in which Defendant raised discovery issues, including that the State had not disclosed the audio recording of the initial interview. The State told the district court that it had only been able to retrieve two of the ten minutes of the initial interview due to "computer problems" and that Investigator Bates said that it was impossible to access the remaining eight minutes because the computer file could not be read. The district court advised Defendant to file a motion so that it could order Investigator Bates to come before the court and explain the issue with the audio file.

**{6}**     Defendant filed a motion to compel production of the initial interview and Victim's mother's interview on August 30, 2010. In his motion, Defendant asserted that the initial interview was lost or destroyed due to a computer difficulty and that the loss of the evidence violated his right to a fair trial. Defendant stated that the initial interview was critical to his defense because Victim did not disclose anal penetration or any other type of sexual penetration to Investigator Bates. Defendant asserted that if the recording could not be produced, the proper remedy would be for the district court to dismiss the charges with

2

prejudice, and he asked the district court to order that the audio files be provided to Defendant or that the recording be sent to an expert for analysis. In the alternative, Defendant asked the district court to suppress the testimony of Victim and any other testimony the recording of the initial interview would impeach. The State, in its response, acknowledged that the recording of the initial interview was "damaged," but argued that there was no prejudice because Investigator Bates routinely does not ask for details when interviewing a child victim of sexual abuse, and Investigator Bates could testify as to his memory of the initial interview.

**{7}** The district court held a motions hearing on January 27, 2011, at which Investigator Bates testified. He stated that he recorded the initial interview using a digital recorder and transferred the recording to his computer. His computer crashed in December 2009, and his hard drive was replaced. Investigator Bates testified that he had only recovered two of the ten minutes of the initial interview after he hired a private computer company to recover his data files. He stated that a county information technology employee, John Goins, tried but could not further recover the remaining eight minutes of the initial interview. Investigator Bates further testified that it might be possible to send the old hard drive containing the initial interview, or at least the new hard drive that contained the partially recovered file, to a computer expert for analysis and that he would be willing to try to find the old hard drive. The State indicated that it had no objection to sending the hard drive to a computer expert. The district court directed Defendant to choose an expert and determine the cost and stated that the district court would determine the action to pursue after receiving this information.

**{8}** At the next status conference, on February 7, 2011, defense counsel indicated that she found an out-of-state company specializing in data recovery and that the cost would be between $500 and $1800. Defense counsel stated that she accompanied Investigator Bates to speak with Goins and that Goins indicated that the old hard drive was available to send to the expert. Defense counsel indicated that she would provide the district court with an order to sign, ordering the hard drive to be sent to the expert. The district court set a status conference for March 7, 2011, in order to determine the status of the hard drive.

**{9}** On March 4, 2011, Defendant filed a motion to compel production of the hard drive. The motion indicated that defense counsel and Investigator Bates spoke with Goins, who had removed the hard drive from Investigator Bates' computer. Goins initially said that he could locate Investigator Bates' hard drive as defense counsel told the district court at the February 7, 2011 hearing, but Goins later told defense counsel that the hard drive was placed unlabeled with around one hundred other discarded hard drives and that he had not attempted to find the one belonging to Investigator Bates. Defendant asked the district court to order the hard drive be turned over to the defense or to dismiss the charges against Defendant.

**{10}** At the status conference three days later, on March 7, 2011, the district court stated that it was its understanding that Defendant was going to locate an expert and that the State would provide the hard drive. Defendant then reiterated what he stated in his motion: that Goins indicated that Investigator Bates' hard drive was among one hundred unlabeled hard

drives and that Goins had not attempted to locate the hard drive. Defendant stated that he would ask the district court for an order directing Goins to begin opening the unlabeled hard drives so that he could locate the one belonging to Investigator Bates. The district court responded that "the hard drive needs to be produced." The State likewise asked the district court for an order. The district court indicated that it would agree to such an order but that it needed to know how many hard drives Goins would have to analyze and acknowledged it had no familiarity with recovering data from hard drives and the time it takes. The district court ultimately directed the State to speak with Goins and determine how long it would take to find Investigator Bates' hard drive and if Goins would be willing to do so. The district court then scheduled another status conference.

**{11}** At a status conference held on March 21, 2011, the State informed the district court that Goins indicated that it would not be possible to locate the hard drive, and that he could not identify Investigator Bates' hard drive. The State also informed the district court that Goins told the State that it would be against county protocol to release all the hard drives to an outside expert for analysis because the hard drives contained confidential information from various county agencies. Upon questioning by the district court, the State indicated that its information was based on conversations with Goins. The district court indicated that if the hard drive was not turned over to Defendant, dismissal might be the only viable option. Defendant suggested an evidentiary hearing in which Goins could testify about the possibility of locating the hard drive, and the district court agreed to set a hearing once Defendant filed whatever motion he deemed appropriate.

**{12}** Defendant filed a motion to dismiss on June 1, 2011. In his motion, Defendant argued that the initial interview was critical to his defense because the "only consistency in [Victim]'s . . . version of events is the[] inconsistency." Defendant specifically pointed out that Victim disclosed anal penetration in her pre-trial interview and during grand jury testimony and said that she told Investigator Bates about anal penetration, which differed from Investigator Bates' report from the initial interview. Defendant's motion characterized the conclusion of the January 27, 2011 hearing as the district court "order[ing] the State to produce the crashed hard drive . . . for inspection and analysis by an expert" and argued that "the State has failed to comply with the [district court's] order compelling the production of the crashed hard drive for analysis by a defense expert." The motion to dismiss included an affidavit from a computer expert that it is "reasonably likely" or "most likely" that a professional data recovery specialist could recover the entire initial interview from the hard drive. The State responded, arguing that issues regarding credibility and inconsistent versions of events should be decided by the jury, that it did not intentionally destroy evidence, that Investigator Bates engaged in his best efforts to retrieve the lost recording of the initial interview, and that dismissal was an inappropriate remedy under the circumstances in this case.

**{13}** The district court held an evidentiary hearing on the motion to dismiss on July 21, 2011. At the hearing, Goins testified that he attempted to recover data from Investigator Bates' hard drive by "slav[ing]" it to another machine, in other words, by connecting it to

4

another computer and attempting to read the data on the other computer. He testified that other companies specialize in advanced data recovery and may have other methods of recovering data that he did not. Goins stated that he placed Investigator Bates' old hard drive in the "junk pile," or a trash can, once he removed it from Investigator Bates' computer and that he does not label hard drives he puts in the trash can. Goins testified that he received a request from Investigator Bates and Defendant to locate Investigator Bates' original hard drive. He spent most of one day trying to access ten hard drives of the roughly one hundred that were saved in one trash bin, he saw information on two that did not match the data on Investigator Bates' hard drive, and he informed Investigator Bates that the drive could not be located at that point.

**{14}** Richard Chavez testified that he is an employee with two companies that specialize in data recovery. He testified that Investigator Bates brought his computer to one of Chavez' stores and asked Chavez to do everything possible to fix his computer and recover the lost data. Chavez used his experience and a software program to recover between ten and fourteen gigabytes of data and testified that he was not aware of any more sophisticated software that he could have used to recover more data. Chavez testified that Investigator Bates' computer had faulty memory due to a manufacturer's defect and that the defect caused data to become corrupted when it was saved onto the computer. He stated that more sophisticated techniques could be used to retrieve more data when a drive is not physically working but that Investigator Bates' computer suffered defective memory that corrupted the data as it was saved.

**{15}** After the testimony, Defendant argued that dismissal was the only appropriate remedy based on (1) the legal analysis for lost or destroyed evidence, and (2) the State's failure to comply with the district court's order to produce the evidence, in particular to find the hard drive and notify the district court how long it would take to search the approximate one hundred unlabeled hard drives to determine which hard drive belonged to Investigator Bates. The State conceded that it breached a duty to preserve but argued that the appropriate remedy was admitting the loss of the initial interview and the circumstances to the jury and permitting Investigator Bates to disclose to the jury that Victim did not disclose anal penetration in the initial interview.

**{16}** The district court issued an order granting Defendant's motion to dismiss. The district court stated that the initial interview contained inconsistencies with other statements made by Victim. It concluded that the lost initial interview was material and that the loss was prejudicial to Defendant. Additionally, the district court's order contains language indicating that the dismissal was, at least partially, based on a discovery sanction for the State's inability or refusal to locate Investigator Bates' hard drive and turn it over to Defendant. In its findings granting the motion to dismiss, the district court stated, apparently based on its oral directive at the January 27, 2011 hearing, that "[p]rior to January [2011], as well as after January 2011, the [district court] directed the State to identify the hard drive." Additionally, the order contained findings that "[f]rom January 2011 until July 2011, the State spent only eight hours trying to identify the correct hard drive after it was

5

commingled with other hard drives, and examined only ten percent of the hard drives in the trash can." Further, "[t]o [the] date of this order, the State has not identified [Investigator] Bate[s'] hard drive." There was no express finding of bad faith or intentional conduct on the part of the State.

**{17}** The State appeals the district court's order granting the motion to dismiss and makes several arguments as to why the district court abused its discretion. It argues that dismissal was not an appropriate remedy under a lost or destroyed evidence analysis because (1) the evidentiary value of the lost recording was minimal, and Defendant failed to establish materiality and prejudice due to the lost recording, and (2) dismissal is not a proper remedy when raised pre-trial. The State also contends that the district court erred to the extent that it granted Defendant's motion to dismiss as a discovery sanction for failure to provide the hard drive to Defendant because (1) the district court never ordered the State to produce the hard drive, (2) Defendant failed to show actual prejudice, and (3) the district court failed to consider less severe sanctions.

**STANDARD OF REVIEW**

**{18}** We review a district court's remedy for lost or destroyed evidence for an abuse of discretion. *See State v. Duarte*, 2007-NMCA-012, ¶¶ 5, 11, 140 N.M. 930, 149 P.3d 1027. Likewise, "[s]anctions for violations of discovery orders are discretionary" and will not be reversed absent an abuse of that discretion. *State v. Bartlett*, 109 N.M. 679, 680, 789 P.2d 627, 628 (Ct. App. 1990). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Duarte*, 2007-NMCA-012, ¶ 3 (internal quotation marks and citation omitted). Additionally, we view the evidence and the inferences drawn from that evidence in favor of the district court's ruling. *See Mathis v. State*, 112 N.M. 744, 747-48, 819 P.2d 1302, 1305-06 (1991).

**BASIS FOR GRANTING THE MOTION TO DISMISS**

**{19}** As an initial matter, the parties dispute the type of analysis this Court should apply to the order dismissing this case. Both parties point out the distinction between cases in which evidence is lost or destroyed and cases in which a district court sanctions the state for a bad faith or intentional violation of a discovery order. In *State v. Chouinard*, 96 N.M. 658, 661, 634 P.2d 680, 683 (1981), our Supreme Court formulated a three-part test to determine the appropriate remedy for lost or destroyed evidence. Under this test, in evaluating whether the district court abused its discretion in dismissing the case for lost or destroyed evidence, we look to whether (1) the state breached a duty or intentionally deprived the defendant of evidence, (2) the lost or destroyed evidence is material, and (3) the defendant suffered prejudice. *See id.* The purpose of this test is to assure that the district court arrived at a determination that will serve the ends of justice. *Id.*

**{20}** In contrast, as a general rule, a district court may impose sanctions against the state for a failure to comply with a discovery order. *See Mathis*, 112 N.M. at 747, 819 P.2d at

6

1305. Our Supreme Court has clarified that dismissal for the violation of a discovery order requires (1) culpable state conduct such as "bad faith, willful non-compliance, or flat-out disregard for a discovery order"; ( 2) tangible prejudice to the defendant as a result of the deprivation of the evidence; and (3) a consideration of lesser sanctions. *State v. Harper*, 2011-NMSC-044, ¶¶ 16-18, 27, 150 N.M. 745, 266 P.3d 25. We initially discuss discovery sanctions as they apply to this case and then address the *Chouinard* test for lost or destroyed evidence.

**{21}** The district court's order dismissing the charges did contain the following findings regarding the production of the hard drive:

> 4. Prior to January 2011, as well as after January, the [district court] directed the State to identify the hard drive.
>
> 5. . . . Defendant requested the hard drive be identified so that Defendant's expert could attempt to retrieve the lost portion of the [initial] interview.
>
> 6. From January 2011 until July 2011, the State spent only eight hours trying to identify the correct hard drive after it was commingled with other hard drives, and examined only ten percent of the hard drives in the trash can.
>
> 7. To date of this order, the State has not identified [Investigator] Bate[s'] hard drive.

These findings stop short of finding that (1) the district court issued a discovery order compelling the State to turn over Investigator Bates' hard drive, and (2) the State willfully did not comply with or intentionally disregarded such a discovery order or otherwise failed to find the hard drive in bad faith. To be sure, these findings indicate a level of frustration from the district court. Additionally, as Defendant points out, at times during the proceedings, the district court questioned the State's efforts to locate the hard drive. However, it is dispositive that the district court never issued an unambiguous order requiring the State to turn over the hard drive to Defendant.

**{22}** As we have discussed, at the January 27, 2011 hearing, the district court told Defendant to determine the cost and identify an expert and that the issue of turning over the hard drive could be discussed at a later time upon receipt of that information. At the February 7, 2011 status conference, Defendant indicated that he would present an order to the district court to sign compelling production of the hard drive, but such an order does not appear in the record. At the March 7, 2011 status conference, the State likewise asked for an order compelling the production, but the district court indicated that it needed to know the number of hard drives that Goins would have to analyze and acknowledged that it had no familiarity with the process for recovering data from hard drives or the time that it takes.

7

At the March 21, 2011 status conference, once the State indicated that Goins was unable or unwilling to locate the hard drive, the district court directed Defendant to file whatever motion he deemed necessary. Defendant subsequently filed his motion to dismiss. Under these circumstances, the district court did not unambiguously order the State to produce the hard drive before dismissing the case, and the State therefore could not have intentionally disregarded or defied a discovery order. *See Harper*, 2011-NMSC-044, ¶ 27 (reversing the suppression of witness testimony because, among other reasons, the district court did not unambiguously order the state to produce the witness for a witness interview).

**{23}** Additionally, it is unclear to what extent the district court granted the motion to dismiss as a discovery sanction for the failure of the State to produce the hard drive. As we have discussed, and as the State points out, the district court's order lacks any specific finding of bad faith, willful noncompliance, or intentional disregard of a discovery order to produce the hard drive. On this basis alone, the district court's order is an abuse of discretion in dismissing the case to the extent it did so as a discovery sanction for the State's failure to provide the hard drive to Defendant. *Cf. State v. Hill,* 2005-NMCA-143, ¶¶ 22-23, 138 N.M. 693, 125 P.3d 1175 (reversing a district court's dismissal of charges because the district court's finding did not indicate that it applied all three prongs of the test for lost or destroyed evidence). To the extent that the district court dismissed Defendant's charges for the failure of the State to produce Investigator Bates' hard drive in defiance of a discovery order to produce the hard drive, the district court abused its discretion. We thus turn to whether the district court abused its discretion in dismissing the charges against Defendant under the framework for lost or destroyed evidence based on the lost or destroyed eight minutes of the recording of the initial interview.

**LOST OR DESTROYED EVIDENCE**

**{24}** From the order granting the motion to dismiss, it appears that the district court granted the motion based on the *Chouinard* line of cases for lost or destroyed evidence. The district court made findings, although conclusory, that the lost audio recording of the initial interview was material and that the loss was prejudicial to Defendant. In evaluating whether the district court abused its discretion under *Chouinard*, we look to whether (1) the State breached a duty or intentionally deprived Defendant of the recording of the initial interview, (2) the lost or destroyed recording of the initial interview is material to the defense, and (3) whether Defendant suffered prejudice. *See Chouinard*, 96 N.M. at 661, 634 P.2d at 683. The purpose of this test is to assure that the district court arrived at a determination that will serve the ends of justice. *Id.*

**{25}** The State concedes that the first prong of the test is met because the State is required to disclose statements made by any anticipated State witness. *See* Rule 5-501(A)(5) NMRA. The State challenges the district court's determination as to the second and third prongs of the *Chouinard* test. As to materiality, Defendant primarily contended in the district court that the initial interview was material because Victim did not disclose anal penetration in the initial interview in contrast to subsequent interviews in which she disclosed anal penetration.

Defendant argued that the inconsistency between the initial interview and subsequent interviews bears on the credibility of Victim and is exculpatory in the sense that it does not support any allegation of anal penetration, which formed the basis of four counts of the indictment.

{26}    The State contends that the district court abused its discretion in finding materiality because (1) Victim disclosed oral penetration and identified Defendant as the perpetrator, and therefore the initial interview did not fully support a claim of innocence; (2) the initial interview was not exculpatory because the hearsay rules prevent Defendant from introducing the statement as substantive evidence for the truth of the matter asserted; and (3) although the initial interview could be used to impeach Victim and question her credibility, it did not rise to the level of "material" as defined by our Supreme Court under the framework for lost or destroyed evidence because it was simply cumulative impeachment evidence in view of numerous inconsistencies made during her interviews with the safe house, her grand jury testimony, and her pre-trial interview.  Our Supreme Court has defined "material" as a " 'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.' " *State v. Fero*, 107 N.M. 369, 371, 758 P.2d 783, 785 (1988) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985) for the definition of materiality from the United States Supreme Court's test for due process analysis for undisclosed evidence).

{27}    We do not agree with the State that Victim's initial statement to Investigator Bates was not material because its only purpose was to impeach Victim's testimony and challenge her credibility.  The State primarily cites *State v. Boeglin*, 105 N.M. 247, 254, 731 P.2d 943, 950 (1987) and *United States v. Cooper*, 654 F.3d 1104, 1120 (10th Cir. 2011), for the proposition that "cumulative impeachment evidence" is not material under our standard.  However, both cases are distinguishable.  *Boeglin* involved a case in which the defendant claimed that the state knowingly used false evidence after trial in a different procedural posture than this case.  105 N.M. at 253-54, 731 P.2d at 949-50.  In *Boeglin*, the state conceded and disclosed to the jury that the transcript at issue was erroneous because it was missing information, and the district court instructed the jury to rely upon the actual tapes and not on the transcript with the missing information.  *Id.* at 254, 731 P.2d at 950.  Our Supreme Court considered the alleged omission in the "context of the entire record" and determined that it was not material because its only purpose was to bolster the defendant's credibility "generally" and to attack the credibility of the two investigators conducting the interview.  *Id.*

{28}    *Cooper* addressed a situation in which the district court suppressed testimony that a government witness prepared false or fraudulent tax returns, which the defendant intended to use for impeachment purposes.  654 F.3d at 1122.  The Tenth Circuit held that the testimony was not "material" because it was only for impeachment and the witness was not a crucial or critical witness to the government's claim.  *Id.* at 1123.  In this case, we cannot say that Victim is not a crucial or critical witness.  An initial statement to investigators made

9

by an alleged victim shortly after the incident in question and which the defendant wishes to use to attack the alleged victim's credibility is material under the second prong of the *Chouinard* test. *See Bartlett*, 109 N.M. at 681, 789 P.2d at 629 (holding that a tape recorded statement made to investigators after the incident in which the alleged victim described the perpetrator was material because it bore on the credibility of the alleged victim); *see also Smith v. Cain*, __ U.S. __, 132 S. Ct. 627, 629-30 (2012) (holding that notes from the investigating investigator that the only eyewitness could not describe the perpetrator was material).

**{29}** We thus turn to whether Defendant suffered prejudice by the loss of the recording of the initial interview with Investigator Bates. *See Chouinard*, 96 N.M. at 661, 634 P.2d at 683. In the district court, Defendant argued that the loss of the recording was prejudicial because it was the most contemporaneous account of the allegations against Defendant, it was inconsistent with later accounts Victim gave investigators, and the later accounts occurred only after Victim had the opportunity to talk with her mother. Defendant also contends that the initial interview was "extremely critical" to the defense because Victim was the only eyewitness to the alleged crimes and there was no inculpatory physical evidence against Defendant. The district court found that the loss of the initial interview prejudiced Defendant without elaborating upon its finding.

**{30}** On appeal, the State contends that the district court erred in finding prejudice because (1) Defendant did not need the recording to establish the inconsistency because Investigator Bates could have testified that Victim did not disclose anal penetration in the initial interview, and (2) the district court could have considered a stipulation or instruction to the jury regarding the contents of the initial interview and explaining the circumstances regarding the lost recording. The State points out that Defendant conceded at the January 27, 2011 hearing that Investigator Bates took "copious notes," that Investigator Bates testified that his report contained everything said during the initial interview, and that Investigator Bates listened to the recording several times before the file was corrupted to ensure his report was accurate. Investigator Bates further testified that he would testify at trial that Victim did not disclose anal penetration during the initial interview.

**{31}** When evaluating prejudice, we examine "the importance of the missing evidence to [the] defendant[] and the strength of the other evidence of [the] defendant's guilt." *Bartlett*, 109 N.M. at 681, 789 P.2d at 629. Because the district court granted the motion to dismiss and the case did not proceed to trial, we focus on the importance of the missing evidence to Defendant's case. *Cf. id.* (focusing on the importance of the missing evidence to the defendant's case because the jury failed to reach a verdict and therefore the strength of the other evidence was not evident).

**{32}** This Court has examined the prejudice prong in a similar case involving a similar piece of missing evidence. In *Bartlett*, the state charged the defendant with criminal sexual penetration, and the investigating officer interviewed the alleged victim on two occasions. *Id.* at 680, 789 P.2d at 628. The state failed to produce the recording of the first interview,

10

and the district court dismissed the charge against the defendant after a first trial resulted in a mistrial and the state indicated that it intended to retry the defendant. *Id.* Although this Court characterized the dismissal as a discovery sanction, we applied the *Chouinard* test for lost or missing evidence in determining whether the district court abused its discretion in dismissing the charge. *Bartlett*, 109 N.M. at 680, 789 P.2d at 628. We held that the recording of the interview was "important to [the] defendant[, but not] so important as to deprive [the] defendant of a fair trial." *Id.* at 681, 789 P.2d at 629. We concluded that the defendant "was still able to vigorously raise and pursue" mistaken identity and fabrication defenses by pointing out discrepancies in the description contained in the initial police report, testimony at the preliminary hearing, and testimony at the first trial. *Id*. at 682, 789 P.2d at 630. Additionally, the defendant cross-examined the victim and the investigating officer at the first trial about the inconsistency and "extensively argued" the issues regarding the missing interview. *Id.* We therefore held that the district court abused its discretion in dismissing the charge. *Id.*

**{33}** Similarly, in *Duarte*, 2007-NMCA-012, ¶¶ 1, 4-5, the state lost a videotape showing the defendant taking a second set of field sobriety tests, and the defendant moved to suppress all evidence that the videotape may have impeached or for dismissal of the charge. Applying *Chouinard*, this Court held that the defendant was not prejudiced by the loss of the videotape. *Duarte*, 2007-NMCA-012, ¶¶ 9-11. We reasoned that (1) the defendant was able to cross-examine the officer about the lost video and to argue its significance to the jury, including attacking the officer's credibility and reliability; (2) the defendant had the officer's report at his disposal and the report contained information relating to the field sobriety tests; and (3) there was other evidence of the defendant's guilt including his breath alcohol content reading. *Id.* ¶ 11.

**{34}** In this case, the district court abused its discretion in dismissing the charges against Defendant due to the lost audio recording of the initial interview because the loss of the recording of the initial interview was not prejudicial to Defendant. First, the record reveals that Defendant had other means to point out the inconsistencies between the initial interview and her later statements and interviews. Investigator Bates testified that his police report on the incident contained the contents of the initial interview, that he listened to the initial interview several times while preparing his report, and that he would testify that Victim did not reveal anal penetration during the initial interview. Defendant initially conceded that Investigator Bates took "copious notes" of the initial interview. The actual recording was therefore unnecessary for Defendant to prove that particular inconsistency to the jury and for Defendant to impeach Victim. *See Bartlett*, 109 N.M. at 682, 789 P.2d at 630 (holding that the defendant suffered no prejudice from the loss of evidence because the defendant could use the police reports and cross-examinations of the investigating officer and the victim to establish the inconsistency between the victim's description of the perpetrator). Second, the district court should have considered other alternatives to dismissal that would have ameliorated any prejudice suffered by Defendant. At the March 7, 2011 hearing, the district court suggested that the loss of the initial interview could be resolved by a stipulation. At the evidentiary hearing, the State agreed that it would consent to a jury

11

instruction explaining the circumstances of the lost recording. However, in its order granting the motion to dismiss, the district court did not address either alternative or why they would be inadequate given the circumstances of the case. Third, as we stated in *Duarte*, reversal is not mandated unless the lost evidence materially affected a determination of guilt or innocence. 2007-NMCA-012, ¶ 11. Given that Defendant only sought to use the initial interview as impeachment evidence and because Defendant had other means to introduce the contents of the initial interview into evidence, the ultimate remedy of dismissal was not appropriate. *See Chouinard*, 96 N.M at 661, 634 P.2d at 683 (stating that the three-part test for a remedy for lost or destroyed evidence is intended to serve the ends of justice). We note that it would have been helpful for us to have findings by the district court explaining its findings of prejudice for our appellate review.

{35}    Defendant argues that *Smith*, ___ U.S. ___, 132 S. Ct. 627 is controlling in this case. In *Smith*, the United States Supreme Court held that witness statements made to an investigating detective that the state failed to disclose to the defendant were material because the defendant could have used the statements to impeach the witness. *Id.* ___, 132 S. Ct. at 629-30. However, *Smith* involved a claim for post-conviction relief, and the defendant was convicted without being aware of the statements that he could have used to impeach the witness. *Id.* In this case, although evidence regarding Victim's initial interview is material to Defendant in order to impeach Victim, Defendant had alternative means to present inconsistencies to the jury, and he will not be deprived of presenting a defense based on the loss of the recording. It is on the basis of the absence of prejudice, not materiality, that we base our conclusion that the district court abused its discretion in dismissing the charges.

{36}    Because we have concluded that the district court abused its discretion in finding prejudice against Defendant for the loss of the initial interview to the extent that it dismissed the case and, therefore, reverse on this ground, we need not address the State's argument that dismissal is not an available remedy when an issue of lost or destroyed evidence is raised pretrial.

**CONCLUSION**

{37}    We hold that the district court abused its discretion in dismissing the charges against Defendant due to the lost audio recording of the initial interview because the loss of the recording of the initial interview was not prejudicial to Defendant. Accordingly, we reverse the district court's dismissal of Defendant's charges.

{38}    **IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

12

_____

**JONATHAN B. SUTIN, Judge**


_____

**CYNTHIA A. FRY, Judge**

**Topic Index for *State v. Redd*, No. 31,558**

**APPEAL AND ERROR**
Standard of Review

**CRIMINAL LAW**
Child Abuse and Neglect
Criminal Sexual Penetration
False Imprisonment
Sexual Exploitation of Children
Sexual Offences

**CRIMINAL PROCEDURE**
Dismissal of Charges
Prejudice
Sanctions

**EVIDENCE**
Disclosure
Discovery
Lost Evidence
Prejudicial Evidence
Taped Evidence

**JUDGES**
Abuse of Discretion