# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Petitioner,

v.                                                            NO. 30,548

**MANUEL LEYBA**,

Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Sam B. Sanchez, District Judge**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Petitioner


Hugh W. Dangler, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Respondent

## DISPOSITIONAL ORDER OF REVERSAL

{1}    This matter having come before the full Court on a petition for writ of certiorari, the Justices having considered the briefs and other relevant file materials,

and otherwise having fully informed themselves on the issues and applicable law as raised by the parties; and

{2}    Each Justice having concurred that there is no reasonable likelihood that a written decision or opinion would affect the disposition of this appeal or advance the law of the State; and

{3}    Acting within this Court's discretion under Rule 12-405(B)(2) NMRA to dispose of a case by order, decision, or memorandum opinion rather than formal opinion because the "absence of substantial evidence disposes of the issue."

**IT IS ADJUDGED THAT:**

{4}    **Facts and Proceedings Below.**  Defendant was charged with shooting at or from a motor vehicle, contrary to NMSA 1978, Section 30-3-8(B) (1993), and aggravated assault with a deadly weapon, contrary to NMSA 1978, Section 30-3-2 (1963), by allegedly shooting from a motor vehicle at Ronnie Tafoya and Juan Roybal, and of assaulting Tafoya with a shotgun, on February 27, 2006. Tafoya called the police, and Officer Tomas Romero responded to the scene and investigated.

{5}    After interviewing the alleged victims and Officer Romero, the only three witnesses on the State's witness list, defense counsel moved to exclude the trial testimony of Tafoya and Roybal, based on allegations that Officer Romero had

2

"purposely or inadvertently" supplied information to the witnesses that Defendant had used a sawed-off shotgun and thereby tainted their independent memories and their potential trial testimony. The defense also argued that the State failed to provide in discovery what the officer in his own interview described as "some sort of audio" that he believed he had made of his initial interviews of Tafoya and Roybal, which allegedly would have disclosed the full context of any information supplied by the officer to the witnesses.

{6}    The prosecutor responded that his files contained no audiotapes of the officer's contact with the witnesses, but that he would check with the officer to determine whether they even existed. The prosecutor further argued that before the court could address any suppression of evidence analysis under *State v. Chouinard*, 96 N.M. 658, 634 P.2d 680 (1981), the State would need to have Officer Romero testify as to the existence or non-existence of the tapes. At the conclusion of the motions hearing, at which no testimony was taken from any witness, the court ruled from the bench: "The Court is going to rule this way. Those audiotapes, if they exist, must be provided to the Defendant by [Tuesday, January 16, 2007]. . . . If they are not, then the motion is going to be granted."

{7}    Later the same day at the January 12 motions hearing, the State filed what it

3

characterized as a "Motion to Reconsider Defendant's Motion to Exclude Witnesses," which alleged that Officer Romero had been contacted and had advised that he obtained only written, not taped, statements from Roybal and Tafoya, and that the State could not disclose audiotapes that never existed in the first place. The State's motion also proffered that "Officer Romero is available to testify under oath concerning the non-existence of any audiotapes involving Juan Roybal and Ronnie Tafoya."

{8}     At the hearing on the State's motion, the district court again took no testimony whatsoever, despite the State's repeated proffer to have the officer, who was present in court, "testify concerning those audiotapes," to confirm that he had been mistaken in his earlier belief that they had existed. The court denied the State's motion without permitting the officer to testify. Without addressing the issue of whether the tapes had in fact ever existed, the court ruled that the State would not be allowed to present at trial the testimony of its two victim-witnesses because the officer had tainted their testimony:

> It's not always up to the jury to judge the credibility of the witness. It's up to the Court to determine whether or not the evidence and witnesses that are to testify should be allowed to testify based on certain events or whatever the argument is. In this case, the reason the Court excluded the two witnesses were – in fact, the victims, I guess, is because their testimony was tainted. The officer told them what was

4

going on. He didn't leave it up to them to tell him. He told them. Therefore, planting that seed in the witnesses. He's the one that told them it was a sawed off shotgun. They may have never known it was or they may have known it was; but if he had let them give their own statement without telling them what to do or say, it may have been different. Or it may have been the same. But now there's no way to tell. So the ruling of the Court stands.

{9} In a very brief memorandum opinion, the Court of Appeals affirmed the district court's exclusion of the witnesses' testimony. The opinion indicated that the district court had based its ruling on an adverse determination of the credibility of the officer's denial that the tapes existed: "[W]e believe that the existence of the audio tapes involved a credibility determination, and we defer to the district court . . . ." *State v. Leyba*, No. 27,478, slip op. at 2 (N.M. Ct. App. June 28, 2007). Despite the fact that the district court had heard no testimony from the officer and had made no finding that the tapes had ever existed, the Court concluded that "the exclusion satisfied the test set forth in *State v. Chouinard*, 96 N.M. 658, 661, 634 P.2d 680, 683 (1981) because the evidence was material to the case and its unavailability prejudiced the defense." *Id.*

{10} This Court granted the State's petition for writ of certiorari. After consideration of the briefs and the record, we conclude that there was no principled justification for the exclusion of the testimony of the prosecution witnesses, and we reverse.

5

{11} **Standard of Review.** We review a district court's admission or exclusion of evidence under an abuse of discretion standard. *Ruiz v. Vigil-Giron*, 2008-NMSC-063, ¶ 7, 145 N.M. 280, 196 P.3d 1286. "An abuse of discretion occurs when the ruling is clearly against the logic and effects of the facts and circumstances of the case, is clearly untenable, or is not justified by reason." *State v. Balderama*, 2004-NMSC-008, ¶ 22, 135 N.M. 329, 88 P.3d 845. "Abuse of discretion exists when the trial court acted in an obviously erroneous, arbitrary, or unwarranted manner." *State v. Stills*, 1998-NMSC-009, ¶ 33, 125 N.M. 66, 957 P.2d 51 (internal quotation marks and citation omitted).

{12} There are two possible theories for the district court's exclusionary ruling, (1) the theory articulated by the district court, that the witnesses should be excluded because the officer tainted their testimony, and (2) the theory relied on by the Court of Appeals, that the witnesses should be excluded because the district court did not believe the officer's proffered account that the audiotapes had never existed, and that the withheld or nonpreserved tapes were material to the taint issue.

{13} **The District Court's "Tainted Witness" Theory.** To the extent that the district court found the officer had tainted the witnesses by disclosing an evidentiary fact to them, Defendant's alleged use of a sawed-off shotgun, that finding was an

6

abuse of discretion.

{14} The briefing of the parties has not cited any case or other authority to support the proposition that a witness may be barred from the witness stand because his or her testimony may have been affected by improper influences. Our own independent research has disclosed *State v. Ruiz*, 2007-NMCA-014, 141 N.M. 53, 150 P.3d 1003, in which the defense sought to exclude a child's testimony on the theory that suggestive interview techniques had so severely undermined the reliability of her independent memories that she should be prohibited from testifying. *Id.* ¶ 21. The State argued that any negative effect that the various interviews might have had on the reliability of the child's recollections "did not provide an adequate basis for the wholesale exclusion of her testimony." *Id.* The Court of Appeals concluded that although our courts have recognized the dangers associated with improper suggestivity in interviewing young children, our courts have never adopted a wholesale exclusion approach. *Id.* ¶ 22.

> When an individual's competency to testify is challenged, the district courts are merely required to conduct an inquiry in order to ensure that he or she meets a minimum standard, such that a reasonable person could "put any credence in their testimony." *State v. Hueglin*, 2000-NMCA-106, ¶ 22, 130 N.M. 54, 16 P.3d 1113 (internal quotation marks and citation omitted). This methodology stems from a core principle of modern civil and criminal procedure, whereby questions of credibility are consigned to juries, rather than judges.

*Id.* ¶ 23. The *Ruiz* Court held that the district court correctly denied the motion to exclude the child's testimony, despite the fact that the district judge acknowledged that there was a "possibility that taint occurred." *Id.* ¶ 24.

{15}     Even if New Mexico law allowed the complete preclusion of a witness because of a tainting influence, nothing in this record could arguably justify such an exclusion. The defense itself, in its motion, alleged that the supplying of the information about the shotgun by the officer was done "purposely or inadvertently." No testimony was ever introduced to show exactly what the officer said, in what context, with what intentions, and with what effect on the memory of the witnesses.

{16}     The parties have cited no authority that would support the proposition that an officer's disclosing to a witness any information about the case, in a police report or otherwise, is a ground for exclusion of even part of a witness's testimony, other than in the limited constitutional context of eyewitness identifications. *See State v. Stampley*, 1999-NMSC-027, ¶ 19, 127 N.M. 426, 982 P.2d 477 (holding manner in which police showed a photographic array to the witnesses was not impermissibly suggestive; questions did not implicitly encourage, and therefore taint, the witnesses' identification of the defendant). While there generally are good reasons to try to avoid this practice, it is a matter for cross-examination at trial, rather than an exclusion of

8

testimony from trial.

{17} Even in the unique eyewitness-identification context, an evidentiary hearing is required, at which the court can hear and consider testimony regarding the suggestive context, the reasons for any suggestivity, and whether or not, as in this case, there may have been an independent source for a reliable courtroom identification. *See State v. Baca,* 99 N.M. 754, 758, 664 P.2d 360, 364 (1983) ("[E]ven given the suggestiveness of an identification procedure, the linchpin in determining the admissibility of identification testimony is whether the testimony is reliable."); *State v. Cheadle*, 101 N.M. 282, 285, 681 P.2d 708, 711 (1983) (holding an in-court identification admissible notwithstanding the fact that the witnesses, who had identified a defendant from a photo array, had seen the defendant's picture on either television or in the newspaper). Moreover, the remedy for impermissibly suggestive eyewitness-identification procedures that destroy the reliability of a proposed in-court identification is not a complete exclusion of the witness from the stand, but a focused exclusion of that part of the testimony relating to the irreparably tainted identification.

{18} It is the function of the jury as factfinder to determine the credibility and reliability of trial witnesses, not that of the judge as gatekeeper. *See State v. Woodward*, 121 N.M. 1, 7, 908 P.2d 231, 237 (1995) (noting substantial evidence

undermining a witness's credibility goes to the weight and not to the admissibility of the evidence). Alleged inconsistencies in testimony are for the jury to resolve at trial. *See State v. Hughey*, 2007-NMSC-036, ¶ 16, 142 N.M. 83, 163 P.3d 470 ("To the extent the trial judge based his ruling on the credibility of the witness, he usurped the role of the jury."). It is not for the district court to substitute its judgment for that of the factfinder. *See id.* ("It is the role of the factfinder to judge the credibility of witnesses and determine the weight of evidence."); *Balderama*, 2004-NMSC-008, ¶ 36 (holding exclusion of relevant, non-cumulative testimony in error). In this case, it was an abuse of discretion to exclude the testimony of the witnesses on the ground they had been tainted, with or without hearing the proffered evidence.

{19}     **The "Refusal to Produce or Failure to Preserve" Theory.** Although the nonproduction of the allegedly missing audiotapes was not the stated basis for the district court's decision, the Court of Appeals improperly relied on *Chouinard* in holding the district court did not abuse its discretion in excluding the witnesses. In *Chouinard*, the question before our Court was what sanctions to apply against the State for failure to preserve evidence. 96 N.M. at 660, 634 P.2d at 682. We applied a three-part test to determine whether the deprivation of the evidence was reversible error. *Id.* at 661, 634 P.2d at 683. The test is whether: (1) the State breached some

10

duty or intentionally deprived the defendant of evidence; (2) the evidence was material; and (3) the suppression of the evidence prejudiced the defendant. *Id.* (citing *State v. Lovato*, 94 N.M. 780, 782, 617 P.2d 169, 171 (Ct. App. 1980)). "The importance of the lost evidence may be affected by the weight of other evidence presented, by the opportunity to cross-examine, by the defendant's use of the loss in presenting the defense, and other considerations." *Id.* at 663, 634 P.2d at 685.

{20}     Because the officer was not permitted to testify in this case, there is insufficient evidence as to whether there was a loss at all. *Chouinard* concerns the loss of evidence, and the crux of any given case where evidence is lost is whether the lost evidence is material and its loss is prejudicial to the accused. Here, however, it remains unclear if this case involves either a loss or destruction of evidence, or whether the audiotape evidence ever existed in the first instance. This determination cannot be made by a judge without even hearing the officer's testimony. Second, because the judge refused to hear the officer's testimony as to the existence of the audiotapes in question, excluding the State's witnesses as a discovery violation was an abuse of discretion. In *McCarty v. State*, 107 N.M. 651, 651, 763 P.2d 360, 360 (1988), the issue before this Court was whether it was an abuse of discretion for the trial court to preclude witness testimony as a sanction against the defendant for failure

to comply with a criminal discovery rule, which was a demand for notice of alibi on charges stemming from a burglary. The State filed a demand for notice of alibi, and the defendant subsequently filed a witness list containing the names and addresses of two witnesses, but did not identify them as alibi witnesses. *Id.* The Court weighed the following factors in deciding to reverse the sanctions: "(1) the effectiveness of less severe sanctions, (2) the impact of preclusion on the evidence at trial and the outcome of the case, (3) the extent of prosecutorial surprise or prejudice, and (4) whether the violation was willful." *Id.* at 653, 763 P.2d at 362. On balance, the preclusion of the evidence at trial was significant. "The trial judge should consider whether the noncompliance was a willful attempt to prevent the State from investigating facts necessary for the preparation of its case. The trial judge then must balance the resulting prejudice to the State against the materiality of the precluded testimony to the outcome of the case." *Id.* at 655, 763 P.2d at 364. The Court held that under the totality of the facts and circumstances it was unreasonable to weigh the balance against the defendant. *Id.* Failure to give alibi notice in the context of the notice-of-alibi rule (1) did not frustrate the presentation of the State's case in light of the fact that the State had been able to interview the only two defense witnesses and learn the substance of their testimony; (2) the precluded testimony was critical for the

12

defense to impeach the credibility of the State's key witness; and (3) the conduct of defense counsel was not willfully noncompliant. *Id.* "Before resorting to preclusion, a trial judge should weigh not only the prejudicial effect of *noncompliance* on the immediate case, but also the necessity to enforce the rule to preserve the integrity of the trial process." *Id.* (emphasis added).

{21} In this case, it is unclear whether there was any noncompliance at all in turning over the audiotapes, because the record is not developed as to the existence or non-existence of the audiotapes in question. The prejudice, moreover, of excluding the only two witnesses in the State's case is severe. If, after testimony of the officer and other material witnesses is heard, the judge determines that noncompliance was a willful attempt to prevent the defense from investigating facts necessary for cross-examination of the witnesses about the nature of the weapon they claim to have seen, perhaps a focused exclusion of testimony about that particular subject may be a proper remedy at that time. *See Stills*, 1998-NMSC-009, ¶ 43 (providing that a court is within its discretion to preclude if the court determines information has been withheld for a tactical advantage). There is insufficient evidence in the record before us, however, to justify such an exclusion.

{22} Both the refusal to hear the critically relevant proffered testimony of the officer

13

and the exclusion of the testimony of the two victim-witnesses on the evidence in this record constituted abuses of discretion. We therefore reverse and remand this matter to the district court, with instructions to vacate its order excluding the testimony of witnesses Tafoya and Roybal, and to conduct such further proceedings in this matter as are consistent with this Order.

{23} **IT IS SO ORDERED:**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**

14