This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36026**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MORRELL TONEY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline D. Flores, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** Defendant Morrell Toney appeals his convictions for numerous offenses stemming from his participation in an armed burglary. Defendant challenges all of his convictions on sufficiency grounds, as well as on the basis that the district court erred in denying his requested relief for the State's loss of evidence. Defendant otherwise challenges his kidnapping conviction, arguing the jury instructions resulted in fundamental error, and his two conspiracy convictions, arguing they gave rise to a double jeopardy violation. We conclude Defendant's multiple conspiracy convictions

violate his right to be free from double jeopardy and accordingly remand to the district court to vacate one of these convictions. We also conclude one of his armed robbery convictions and his child abuse conviction are not supported by sufficient evidence; and we therefore reverse the same. We otherwise affirm.

## BACKGROUND

{2}     The charges in this case arose from a home invasion occurring in November 2012 at around 3:00 or 4:00 a.m. Defendant and two other men kicked in the door to an apartment and entered; three women, a man, and a child were there at the time. Alexa Draughan, one of the women at the apartment, was in the living room when the men invaded. Draughan screamed and jumped into the bedroom of another of the women, Lanetta Blackman. The third woman, Roxanna Cantu, was in her bedroom with her adult nephew Isaiah Thompson.

{3}     Cantu testified that Defendant held a gun to her head, made her strip, and touched her breasts. Cantu's four-year-old daughter J.F. was held in the living room by one of the men throughout the episode. Blackman testified that Defendant pointed a gun at her head, made her take off her clothes, ripped off her bra, and touched her breasts. Blackman remembered Defendant saying something to the effect of, "Mmm, I want some of this," or "You're going to give me some of this tonight." Defendant then put his gun in Blackman's underwear, trying to pull them off. Seeing this, Draughan— still in Blackman's room—managed to turn Defendant's attention toward her. Defendant walked over to Draughan, cocked his gun, and pointed it at her face.

{4}     During the incident, the men demanded money and eventually left with a television and three cell phones. Blackman testified that it seemed like the men were in the apartment for about thirty minutes in total, while Cantu said they were there for "a good twenty minutes . . . if not longer." Later that day, the police located Defendant sitting in a parked car; upon his arrest, police found a handgun on the car floor by Defendant's seat.

{5}     Defendant was tried for multiple crimes related to these incidents. Prior to the case being submitted to the jury, the district court directed verdicts of acquittal on tampering with evidence; criminal sexual contact of Draughan; and kidnapping Draughan, permitting the lesser offense of false imprisonment to go to the jury. The jury was instructed on accomplice liability.

{6}     Defendant was acquitted of one count of armed robbery, for taking a television from Draughan (NMSA 1978, § 30-16-2 (1973)). The jury found Defendant guilty of two counts of conspiracy (NMSA 1978, § 30-28-2 (1979)), one for armed robbery and one for aggravated burglary; child abuse of J.F. (NMSA 1978, § 30-6-1(D) (2009)); armed robbery, for taking Cantu's cell phone (§ 30-16-2); armed robbery, for taking Blackman's cell phone (§ 30-16-2); false imprisonment of Draughan (NMSA 1978, § 30-4-3 (1963)); aggravated burglary (NMSA 1978, § 30-16-4(A) (1963)); kidnapping Blackman (NMSA 1978, § 30-4-1(A) (2003)); and criminal sexual contact of Blackman (NMSA 1978, § 30-

9-12 (1993)). Defendant also was convicted of two counts of possession of a firearm by a felon (NMSA 1978, § 30-7-16 (2001, amended 2020))—one for possession during the home invasion, and the other for possession in the car—for which Defendant waived his right to a jury trial.

**{7}** At sentencing, the district court vacated the felon in possession of a firearm conviction, related to Defendant's possession of the firearm in the car, and the criminal sexual contact of Blackman conviction, and sentenced Defendant on the remaining convictions. Additional facts are introduced as relevant to our discussion of the issues.

## DISCUSSION

**{8}** Defendant challenges the validity of all his remaining convictions.[1] We first take up Defendant's specific challenges to his various convictions. We then address his contention that the district court erred in denying his requested relief for the State's loss of evidence.

## I. Challenges to Convictions

### A. Conspiracy Convictions

**{9}** Defendant was convicted of conspiracy to commit aggravated burglary and conspiracy to commit armed robbery, both third-degree felonies. *See* § 30-28-2(B)(2) (designating conspiracy to commit a second-degree felony as a third-degree felony); § 30-16-4 (aggravated burglary is a second-degree felony); § 30-16-2 (armed robbery is a second-degree felony for a first offense). Defendant contends these multiple conspiracy convictions violate his right to be free from double jeopardy. The State concedes that one of the conspiracy convictions should be vacated on double jeopardy grounds. Having reviewed the record, we agree the State presented evidence of only one act of conspiracy. *See State v. Guerra*, 2012-NMSC-027, ¶ 9, 284 P.3d 1076 (observing that an appellate court is not bound by the state's concession); *State v. Gallegos*, 2011-NMSC-027, ¶ 55, 149 N.M. 704, 254 P.3d 655 (concluding that the Legislature established, with the adoption of the conspiracy statute, "a rebuttable presumption that multiple crimes are the object of only one, overarching, conspiratorial agreement subject to one, severe punishment set at the highest crime conspired to be committed"). We therefore conclude Defendant's multiple conspiracy convictions violate double jeopardy, and we remand to the district court to vacate one of the conspiracy convictions.

### B. Child Abuse of J.F.

**{10}** Defendant challenges his child abuse conviction, raising the sufficiency of evidence, the propriety of the jury instructions, and the district court's designation of that

---

[1]Defendant also challenges his multiple convictions for felon in possession of a firearm and his conviction for criminal sexual contact of Blackman, apparently not realizing one of the felon in possession of a firearm conviction and the criminal sexual contact conviction were vacated. Given these convictions do not stand, we do not address Defendant's various arguments pertaining to them.

offense as a serious violent offense. Because we reverse Defendant's child abuse conviction on sufficiency grounds, we do not address Defendant's additional claims of error.

**{11}** We review this sufficiency challenge, as well the others advanced by Defendant, with the following principles in mind. "[W]e apply a substantial evidence standard to review the sufficiency of the evidence at trial." *State v. Chavez*, 2009-NMSC-035, ¶ 11, 146 N.M. 434, 211 P.3d 891. "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (alteration, internal quotation marks, and citation omitted). "In performing this review, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (internal quotation marks and citation omitted). Although this review is highly deferential to the jury's verdict, it is "the independent responsibility of the courts to ensure that the jury's decisions are supportable by evidence in the record, rather than mere guess or conjecture." *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 (internal quotation marks and citation omitted).

**{12}** The State's theory of child abuse was that Defendant put J.F. at risk of harm by breaking into the apartment in the middle of the night and carrying out an armed robbery while J.F. was held by one of the men in the living room. Defendant argues that there was insufficient evidence of endangerment to J.F. to meet the standard our courts have established for such convictions. We agree.

**{13}** Defendant was convicted of child abuse by endangerment, pursuant to Section 30-6-1(D)(1), which defines the offense in relevant part as "knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be . . . placed in a situation that may endanger the child's life or health[.]" "Child abuse by endangerment, as opposed to physical abuse of a child, is a special classification designed to address situations where an accused's conduct exposes a child to a significant risk of harm, even though the child does not suffer a physical injury." *Chavez*, 2009-NMSC-035, ¶ 15 (emphasis, internal quotation marks, and citation omitted). Under this standard, a defendant's conduct must create "a substantial and foreseeable risk of harm." *Id.* ¶ 22 (emphasis omitted). "To determine whether the harm to the child was foreseeable, we look at the magnitude of risk created by a defendant's conduct. Notably, [our courts] have declined to uphold endangerment convictions where the risk of harm is too remote, which may indicate that the harm was not foreseeable." *State v. Juan*, 2010-NMSC-041, ¶ 24, 148 N.M. 747, 242 P.3d 314 (internal quotation marks and citations omitted).

**{14}** In the particular situation where a child endangerment charge is based on a child's proximity to criminal activity, a conviction generally will be upheld when the activity puts the child at "significant risk of articulable harm," but not when the situation

puts the child in "mere proximity" to danger.[2] *See Trujillo*, 2002-NMCA-100, ¶¶ 16, 18. For instance, our Supreme Court upheld a child abuse conviction in *McGruder*, where the defendant threatened to kill a woman at gunpoint while her daughter stood behind her, and then followed the woman around her residence with the gun as the child "cried throughout the ordeal." 1997-NMSC-023, ¶ 38. In later examining the facts of *McGruder*, this Court considered it significant that the child was "situated directly in the line of physical danger from a lethal weapon, which was pointed in [the child's] direction during a heated exchange." *Trujillo*, 2002-NMCA-100, ¶ 16. In contrast to *McGruder*, *Trujillo* held that there was insufficient evidence of child abuse where a man, in a rage, attacked his daughter's mother in their bedroom with a belt, the eight-year-old girl tried to enter her parents' bedroom, and the girl returned to her own room after being told to leave. 2002-NMCA-100, ¶¶ 3-5, 20. We observed that there was no evidence the girl was threatened with harm. *Id.* ¶ 19. Specifically, she did not come into range of the blows—that is, "the direct line of danger[.]" *Id.* Moreover, there was no evidence of emotional harm. *Id.* ¶ 20.

**{15}**    Similar to *Trujillo*, 2002-NMCA-100, in this case there was no evidence that J.F. was threatened with harm or that she came into the direct line of danger, or that she suffered emotional harm. Rather, the evidence showed that Defendant and the other intruders isolated J.F. in the living room while Cantu, Blackman, and Draughan were held or threatened at gunpoint in the bedrooms—much the way the *Trujillo* defendant kept his daughter away from the parents' bedroom. *See id.* ¶¶ 3, 19.

**{16}**    The State agrees that there was no evidence that J.F. was ever in the line of fire, as was the child in *McGruder*. Instead it argues for affirmance by highlighting how this case is different from *Trujillo*, in that the *Trujillo* defendant did not wield a gun. The State contends that the gun here increased the seriousness of the threatened harm. While generally true that a gun poses a risk of more serious harm than does a belt, this argument misses the point. Even the most dangerous of weapons poses no threat when a child is not exposed to it. At bottom, the facts here do not support a "substantial and foreseeable risk of harm" to J.F. sufficient to uphold Defendant's conviction for child abuse. *Chavez*, 2009-NMSC-035, ¶ 22 (emphasis, internal quotation marks, and citation omitted). We therefore reverse Defendant's child abuse conviction.

## C.    Armed Robbery of Blackman

**{17}**    Defendant was convicted of armed robbery of Blackman. To arrive at this verdict, the jury had to find, in relevant part, that Defendant "took and carried away a cellular phone from . . . Blackman, or from her immediate control[,] intending to permanently

---

[2]The parties rely on, and we discuss herein, *State v. Trujillo*, 2002-NMCA-100, 132 N.M. 649, 53 P.3d 909; and *State v. McGruder*, 1997-NMSC-023, 123 N.M. 302, 940 P.2d 150, *abrogated on other grounds by Chavez*, 2009-NMSC-035. We acknowledge that the standard by which child abuse by endangerment is measured has been modified since *Trujillo* and *McGruder*. *See Chavez*, 2009-NMSC-035, ¶¶ 15-22. The analyses in these cases, however, still appear sound based on our Supreme Court's reliance on them in *Chavez* when considering the gravity of the risk or the seriousness of the threatened injury. *See id.* ¶¶ 23-24 (citing *Trujillo* and *McGruder* favorably).

deprive [her] of the property[.]" *See* UJI 14-1621 NMRA. The State concedes it elicited no evidence that Blackman had a cell phone that was taken during the incident.

**{18}** Having reviewed the record, we agree that this evidence was missing. Draughan testified that the intruders stole three cell phones. When asked whose they were, she answered that one was hers, another Cantu's, and the third, Thompson's. Separately, Cantu said—on the stand and through the playback of a 911 recording—that her phone and Thompson's phone were taken. This was the only evidence presented concerning the stolen phones. Given that the evidence omitted any indication that a cell phone was taken from Blackman or from her immediate control, Defendant's conviction for armed robbery of Blackman cannot stand. *See Chavez*, 2009-NMSC-035, ¶ 11 (providing that, absent a rational finding of each essential element of a crime, the substantial evidence standard is not met).

**D.    Kidnapping of Blackman**

**{19}** Defendant argues for reversal of his kidnapping conviction on the grounds that (1) the jury was erroneously instructed on the issue of incidental restraint; and (2) relatedly, insufficient evidence exists to sustain his conviction. We disagree with Defendant on both points and therefore affirm his kidnapping conviction.

**{20}** We review Defendant's jury instruction challenge for fundamental error since he did not object to the instructions at trial. *See, e.g.*, *State v. Sandoval*, 2011-NMSC-022, ¶ 13, 150 N.M. 224, 258 P.3d 1016. Fundamental error may occur when "failing to instruct the jury on a definition or amplification of the elements of the crime . . . prevent[s] the jury from making a critical determination[.]" *State v. Sena* (*Sena II*), 2020-NMSC-011, ¶ 41, 470 P.3d 227 (internal quotation marks and citation omitted). Defendant contends such a failure occurred here.

**{21}** The jury was instructed in relevant part that, to find Defendant guilty of kidnapping, it had to find that he "restrained or confined" Blackman "by force or intimidation" with the intent "to hold . . . Blackman against [her] will, to inflict physical injury or a sexual offense on . . . Blackman[.]" The jury also was instructed that it had to find "[t]he act of holding . . . Blackman is separate from criminal sexual contact." Defendant argues that the latter instruction failed to properly instruct the jury on the issue of incidental restraint as required by *State v. Trujillo*, 2012-NMCA-112, 289 P.3d 238, and consistent with UJI 14-403(4) NMRA.[3] Although the parties dispute whether the given instruction adequately conveyed the concept of incidental restraint, we need not decide this question because, even assuming the given instruction was deficient, we hold that the absence of an incidental restraint instruction, along the lines of UJI 14-403(4), did not amount to fundamental error under the circumstances presented here.

---

3Subsequent to *Trujillo* but after the trial in this case, the uniform jury instruction for kidnapping, UJI 14-403, was amended. It now requires a finding that the taking, restraint, confinement, or transportation of the victim "was not slight, inconsequential, or merely incidental to the commission of another crime[,]" *id.*, but only "if the evidence raises a genuine issue of incidental conduct," *id.* Use Note 8.

**{22}**     We start with *Trujillo*, 2012-NMCA-112, on which Defendant relies. The defendant in *Trujillo* was convicted of kidnapping and aggravated battery, among other charges. *See* 2012-NMCA-112, ¶ 1. After conducting a comprehensive survey of kidnapping jurisprudence, *id.* ¶¶ 9-38, *Trujillo* determined that "the Legislature did not intend to punish as kidnapping restraints that are merely incidental to another crime." *Id.* ¶ 39. Although this Court identified three tests for determining "whether a restraint or movement is 'incidental' to other crimes[,]" *Trujillo* ultimately did not adopt any specific test because, under any of them, the defendant's kidnapping conviction could not be sustained as a matter of law. *Id.* ¶¶ 32, 39. *Trujillo* emphasized that the unique factual circumstances of that case, which were described as "a momentary grab in the middle of a fight," *id.* ¶ 6, allowed this Court to make this determination as a matter of law. *Id.* ¶ 42. But *Trujillo* observed that a "more complicated factual scenario would present a jury question . . . as to whether the restraint involved was merely incidental to the other crime." *Id.*

**{23}**     Defendant additionally relies on *State v. Sena* (*Sena I*), 2018-NMCA-037, 419 P.3d 1240, *aff'd in part, rev'd in part*, 2020-NMSC-011, a case involving facts this Court believed to constitute the more complicated factual scenario recognized in *Trujillo*. In *Sena I*, the defendant restrained the victim by holding her at knifepoint in her bedroom, ordering her to undress, following her to the restroom, and masturbating while she used the restroom. 2018-NMCA-037, ¶ 2. The defendant then led the victim back to her bedroom and sexually assaulted her. *Id.* This Court held in *Sena I* that it was for the jury to determine whether the restraint prior to the sexual assault was "slight, inconsequential, or incidental to the commission of the sexual offense[,]" and that it was fundamental error not to instruct the jury as such. *Id.* ¶ 25.

**{24}**     After completion of briefing in this case, our Supreme Court in *Sena II* reversed *Sena I*'s conclusion regarding incidental restraint, even though the Court already had reversed on another issue. *See* 2020-NMSC-011, ¶¶ 31-32 ("Although we would not ordinarily address an issue pertaining to an instruction after reversing all of a defendant's convictions and remanding for a new trial, we do so in this case because the Court of Appeals reached a result we disagree with in a published, formal opinion."). Our Supreme Court reasoned that because the given kidnapping instruction tracked the language of the kidnapping statute, "the jury was properly instructed on every essential element of kidnapping." *Id.* ¶ 35. The Court concluded that—under the circumstances presented—the absence of an instruction on the concept of incidental conduct was not akin to the omission of an essential element. *Id.* ¶ 41. The Court reasoned that no fundamental error occurred because the facts of the case made clear that whether the restraint used to kidnap the victim was "merely incidental to the sexual offenses was not a critical determination for the jury to make" and was not "of central importance in arriving at a legally correct verdict." *Id.* (internal quotation marks omitted). *Sena II* concluded that "the crime of kidnapping was complete" at the time the victim was using the restroom, *id.* ¶ 36, and that "[a]ny restraint incidental to the sexual assaults was separate and distinct from the restraint that [the d]efendant used to complete the kidnapping," *id.* ¶ 39.

**{25}**    In light of the elucidation from *Sena II*, we conclude no fundamental error occurred in this case. The evidence at trial showed that two of the intruders entered Blackman's room shortly after breaking into the apartment. Moments later, one of them, who Blackman and others identified as Defendant, put a gun to her head. Defendant subsequently told Blackman to undress and then ripped off her bra and squeezed her breasts. Blackman testified that it seemed like the men were in the apartment for about thirty minutes, while Cantu described the episode as lasting twenty minutes or longer.[4] Although the record is not entirely clear as to when the sexual assault occurred during that window of time, twenty to thirty minutes was much more time than necessary to commit criminal sexual contact of Blackman, which required only that Defendant unlawfully "touched or applied force to the unclothed breasts of . . . Blackman without [her] consent" while armed with a firearm. *See* UJI 14-914 NMRA. Moreover, after Defendant committed the sexual assault of Blackman, the episode continued. Draughan testified that after Defendant sexually assaulted Blackman, he pointed the gun in Draughan's face and the men kept looking for money in the apartment. And although one of the other two men urged Defendant to leave after they took Blackman's television, Defendant continued to ask about the money and wanted to "wait."

**{26}**    Considering the brief nature of the criminal sexual contact in relation to the twenty to thirty minutes of total restraint or confinement—which began shortly after the men entered the apartment, continued while Defendant committed other crimes, and did not end until the men left—whether the restraint of Blackman was incidental to the sexual assault "was not a 'critical determination' for the jury to make[.]"[5] *Sena II*, 2020-NMSC-011, ¶ 41; *see also State v. Herrera*, 2015-NMCA-116, ¶¶ 5, 10, 362 P.3d 167 (holding, under a reversible error standard, that a "prolonged" restraint over the course of a robbery "is simply not incidental to or inherent in aggravated assault under any of the tests described in *Trujillo*"). We consequently conclude that although the absence of an incidental restraint instruction, along the lines of UJI 14-403(4), might have amounted to error, it does not rise to the level of fundamental error under the facts of this case. *See Sena II*, 2020-NMSC-011, ¶ 41. *See generally State v. Barber*, 2004-NMSC-019, ¶ 12, 135 N.M. 621, 92 P.3d 633 (concluding that if the defendant had

---

[4]Defendant states that the total invasion time was "anywhere from 5 to 30 minutes[.]" In support, Defendant cites a pretrial motion hearing, at which an officer who interviewed the victims testified that the incident lasted five to ten minutes. The only evidence from trial we found on the subject was the testimony of Cantu and Blackman described above. Defendant cites no authority for the proposition that courts may look to evidence presented outside of trial when evaluating the propriety of a jury instruction, and we do not consider such evidence in our analysis. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and . . . given no cited authority, we assume no such authority exists[.]").

[5]Defendant additionally contends that the kidnapping restraint was merely incidental to the ongoing robbery. In response, the State argues that, because Defendant prolonged Blackman's confinement after the robbery was completed and Defendant did not in fact commit robbery of Blackman, the kidnapping restraint could not have been merely incidental to the robbery. Defendant does not address these contentions. Nor does he elaborate on how the restraint used for the kidnapping was merely incidental to the robbery, which required only that Defendant or his accomplice "took and carried away" property "by threatened force or violence" while armed with a firearm. *See* UJI 14-1621. We accordingly do not consider Defendant's argument further. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (providing that appellate courts are under no obligation to review unclear or undeveloped arguments).

requested an instruction defining possession at trial, it would have been reversible error to deny the request, but rejecting the defendant's fundamental error claim because the missing definition did not implicate "a critical determination akin to a missing elements instruction" (internal quotation marks and citation omitted)).

**{27}** Beyond the jury instruction issue, Defendant relatedly challenges the sufficiency of the evidence to support his kidnapping conviction on the ground that the restraint he used against Blackman was merely incidental to that used for the commission of criminal sexual contact and the robbery. For the same reasons that we concluded no fundamental instructional error occurred, we conclude that Defendant's kidnapping conviction is supported by sufficient evidence of restraint that was not merely incidental to another crime. *Cf. Trujillo*, 2012-NMCA-112, ¶ 6 (describing as "two sides of the same coin" the defendant's argument that the Legislature did not intend to punish restraint incidental to an aggravated battery as kidnapping and a separate argument that the evidence supporting his kidnapping conviction was insufficient because it failed to establish restraint not incidental to the aggravated battery).

**{28}** We affirm Defendant's kidnapping conviction.

### E.    Sufficiency of the Evidence for Remaining Counts

**{29}** Defendant challenges the sufficiency of the evidence for his remaining convictions: armed robbery of Cantu, false imprisonment of Draughan, aggravated burglary, conspiracy, and felon in possession of a firearm. Defendant argues, in a single sentence, that there was insufficient evidence to find beyond a reasonable doubt that he was the one who committed the crimes. This is inadequate to warrant review. *See* Rule 12-318(A)(4) NMRA ("A contention that a verdict, judgment, or finding of fact is not supported by substantial evidence shall be deemed waived unless the argument identifies with particularity the fact or facts that are not supported by substantial evidence[.]"); *State v. Perry*, 2009-NMCA-052, ¶ 55, 146 N.M. 208, 207 P.3d 1185 ("Absent articulation of particular facts that are not supported by substantial evidence, we affirm the jury's verdict.").We accordingly affirm the jury's verdict as to these convictions.

### II.    Lost Evidence

**{30}** Lastly, we address Defendant's challenge of the district court's denial of his requested relief for the State's loss of evidence. After the burglary, Officer Richard Whitten arrived at the scene and spoke with the victims about what happened. The adult victims gave Officer Whitten written statements about the incident. The officer used these statements to complete his incident report and later turned in the written statements to his sergeant.

**{31}** The State, apparently unaware of the statements' existence, did not disclose them to the defense. Defense counsel nevertheless learned of them shortly before trial. Citing the non-disclosure, Defendant moved for a dismissal of the charges or exclusion

of the victim-witnesses' testimony. At trial, Defendant sought another countermeasure; he requested an instruction informing the jury that the statements "have been lost or destroyed" and "may have been used by Defendant to impeach the testimony of the witnesses." The district court determined that the statements had been lost, but the court denied Defendant's requests, opting instead to let the defense highlight the matter at trial. As a result, in both the opening statement and the closing argument, defense counsel advanced the idea that the statements could have revealed that Defendant was not one of the perpetrators and also insinuated that the statements' absence meant the State had something to hide. On appeal, Defendant contends the district court erred in denying his requests for exclusion of evidence and for a lost-evidence instruction.[6] We hold that the district court did not so err.

**{32}**    We review the district court's decision for abuse of discretion. *See State v. Redd*, 2013-NMCA-089, ¶ 18, 308 P.3d 1000. Our Supreme Court in *State v. Chouinard*, 1981-NMSC-096, ¶ 16, 96 N.M. 658, 634 P.2d 680, announced a three-part test to guide district courts in their assessment of the state's lost evidence, which we likewise employ in our review on appeal, *see Redd*, 2013-NMCA-089, ¶ 24. Under the *Chouinard* test, courts consider whether "(1) the state breached a duty or intentionally deprived the defendant of evidence, (2) the lost or destroyed evidence is material, and (3) the defendant suffered prejudice." 1981-NMSC-096, ¶ 19. "When evidence is lost in a way that does not involve bad faith, the defendant bears the burden of showing materiality and prejudice before sanctions are appropriate." *State v. Pacheco*, 2008-NMCA-131, ¶ 30, 145 N.M. 40, 193 P.3d 587. Where, as here, the loss of evidence is known before trial, "there are two alternatives: Exclusion of all evidence which the lost evidence might have impeached, or admission with full disclosure of the loss and its relevance and import."[7] *Chouinard*, 1981-NMSC-096, ¶ 23. The choice between these alternatives depends on the district court's assessment of materiality and prejudice. *Id.*

**{33}**    Concerning *Chouinard*'s first part, "[i]t is generally understood that the [s]tate has a duty to preserve evidence obtained during the investigation of a crime." *Pacheco*, 2008-NMCA-131, ¶ 28. As the State in this case concedes, it lost the written victim-witnesses' statements. It therefore breached its duty. *See id.* The breach, however, was inadvertent; as Defendant acknowledges, there was no evidence that the statements were intentionally lost.[8]

---

6Defendant appears to abandon any contention that the district court erred in denying his request to dismiss the charges as a remedy for the lost evidence and instead focuses his argument on the denial of the requested jury instruction. We limit our analysis accordingly.

7We assume but do not decide that a "lost evidence" jury instruction would be an appropriate remedy for the State's loss of evidence. *But see State v. Watley*, 1989-NMCA-112, ¶ 13, 109 N.M. 619, 788 P.2d 375 ("[I]n the absence of good cause, no instructions (beyond those otherwise provided [in the Uniform Jury Instructions]) are to be given concerning the weight or effect to be accorded certain types of evidence."); UJI 14-5011 NMRA (directing that the jury not be instructed on the subject of a party's failure to produce evidence).

8Despite this, Defendant argues that "there was evidence of bad faith" elsewhere—"in the prosecutor's insistence that the witness statements had never been made[.]" As an initial matter, it is not clear which of the prosecutor's actions Defendant refers to here. Regardless, to the extent Defendant maintains that the State acted in bad faith, we note that he fails to cite any authority supporting the proposition that bad faith

**{34}** Given this absence of bad faith, Defendant must show materiality and prejudice under *Chouinard*'s next two parts. *See Pacheco*, 2008-NMCA-131, ¶ 30. The district court is in the best position to evaluate these factors, which are influenced "by the weight of other evidence presented, by the opportunity to cross-examine, by the defendant's use of the loss in presenting the defense, and other considerations." *Chouinard*, 1981-NMSC-096, ¶ 25.

**{35}** Defendant has not made the required showing. Even if we assume that the evidence was material, Defendant fails to establish that its absence prejudiced him; this shortcoming alone forecloses reversal. *See Pacheco*, 2008-NMCA-131, ¶ 30 (observing that materiality *and* prejudice are prerequisites to sanctions). "When evaluating prejudice, we examine the importance of the missing evidence to the defendant and the strength of the other evidence of the defendant's guilt." *Redd*, 2013-NMCA-089, ¶ 31 (alterations, internal quotation marks, and citation omitted). Defendant argues that he suffered prejudice because the loss of the written statements "undermined defense counsel's ability to analyze the consistency of the [victim-witnesses'] claims (which were not wholly consistent)." He continues by stating, "Because there was some variance as to the witnesses' descriptions of the assailants and the witnesses' memories were likely to worsen over time, access to the original statements would have been helpful and likely provided some impeachment material to the defense." This argument, however, ignores the evidence tending to disprove his theory. As the State points out, Draughan testified that her written statement was consistent with her trial testimony. Furthermore, Officer Whitten testified that he incorporated the written statements into his incident report, which he completed on the night of the incident. Although our ability to verify the accuracy of Officer Whitten's testimony is limited due to the report's absence from the record, we fail to see how, in light of the foregoing evidence and the lack of any countervailing it, Defendant could meet his burden of showing that the written statements were important to his case. *See Chouinard*, 1981-NMSC-096, ¶¶ 2, 26 (holding there was no abuse of discretion in the denial of a motion to dismiss where there was no "realistic basis, beyond extrapolated speculation, for supposing that availability of the lost evidence would have undercut the prosecution's case"). Moreover, he entirely fails to address "the strength of the other evidence of [his] guilt." *Redd*, 2013-NMCA-089, ¶ 31 (internal quotation marks and citation omitted). All in all, Defendant does not convincingly show how he meets the prejudice part of the *Chouinard* test.

**{36}** In light of the foregoing, the district court did not abuse its discretion by denying Defendant's requests for exclusion of the victim-witnesses' testimony and for the lost-evidence jury instruction. *See State v. Branch*, 2018-NMCA-031, ¶¶ 49, 52, 54, 417 P.3d 1141 (concluding, in light of "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial," that the district court did not err in denying the defendant's request for a lost-evidence jury instruction (internal quotation marks and citation omitted)); *State v. Duarte*, 2007-NMCA-012, ¶ 11, 140 N.M. 930, 149 P.3d 1027 (holding there was no

---

in this context can refer to a prosecutor's representations regarding the existence of evidence, as opposed to the state's handling of evidence. We therefore assume none exists and disregard this claim. *See, e.g.*, *Vigil-Giron*, 2014-NMCA-069, ¶ 60.

abuse of discretion in choosing not to exclude evidence where the defendant failed to show that the lost evidence "would have undercut the prosecution's case" or that its absence "materially affected a determination of guilt or innocence").

**CONCLUSION**

**{37}** For the foregoing reasons, we reverse on double jeopardy grounds one of Defendant's conspiracy convictions and reverse for insufficient evidence Defendant's convictions for child abuse of J.F. and armed robbery of Blackman; and we remand to the district court to vacate the same and to resentence Defendant accordingly. We otherwise affirm.

**{38}  IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**BRIANA H. ZAMORA, Judge**

**ZACHARY A. IVES, Judge**